THEO. BUCKNER GRIFFITH, Respondent, v. SUPREME COUNCIL OF THE ROYAL ARCANUM, Appellant.

St. Louis Court of Appeals, April 7, 1914.

1. **FRATERNAL BENEFICIARY ASSOCIATIONS: Estoppel: Waiver: Acts of Subordinate Lodge.** Where the by-laws of a fraternal beneficiary association prohibit subordinate lodges from waiving the rights of the association or affording the basis for an estoppel against it, with respect to its insurance contracts, no waiver or estoppel may be invoked against it, based upon the acts of a subordinate lodge or its officers, unless the association has in some manner authorized the acts on which such waiver or estoppel is based.

2. ———: **Payment of Assessments: Waiver of Time.** A fraternal beneficiary association may waive its by-laws declaring a forfeiture for the failure of a member to make prompt payment of assessments, and may become estopped by a course of conduct towards members whereby they are led to believe that a forfeiture will not be declared for failure to pay an assessment promptly; so that, if a fraternal beneficiary association, by its continued conduct, induces a member to fall into the habit of delaying payment of assessments beyond the time at

which the by-laws provide a member shall be suspended for non-payment, it cannot, without warning to the member, suspend him and forfeit his rights for nonpayment at the time provided in the by-laws.

3. **CORPORATIONS: Notice to Agents.** Notice to a corporation will be regarded as having been communicated to it if communicated to any agent having authority to act for it in the premises or whose duty it is to convey the information to its board of directors.

4. ————: **Knowledge of Officers.** A corporation will be regarded as being advised with respect to facts within the knowledge of one of its officers, during the time he is engaged in transacting business for it, and especially as to facts pertaining to that branch of the business over which he has some control.

5. **FRATERNAL BENEFICIARY ASSOCIATIONS: Payment of Assessments: Waiver of Time.** In view of a by-law of a fraternal beneficiary association, providing that the supreme treasurer shall perform all duties relating to the widows' and orphans' benefit fund, and of the fact that the benefit fund was derived solely through assessments on the members, knowledge by him of the practice of a subordinate lodge of accepting assessments after they were due is imputed to the association, so as to authorize a finding of waiver by it of a provision of its by-laws, suspending a member for nonpayment of assessments when due, notwithstanding its by-laws prohibited a subordinate lodge from waiving any of its rights.

6. ————: ————: **Estoppel.** A fraternal beneficiary association which had knowledge, through its supreme treasurer, of the custom of a subordinate lodge in not forfeiting the rights of members for nonpayment of assessments when due, in accordance with its by-laws, is estopped from invoking such by-laws to forfeit the rights of a member for nonpayment of an assessment, without first giving notice to him and an opportunity to pay such assessment, notwithstanding the by-laws of the association prohibited the subordinate lodge from waiving any of its rights.

Appeal from St. Louis City Circuit Court.—*Hon. W. B. Homer*, Judge.

AFFIRMED.

*F. H. Bacon* for appellant.

(1) It is settled law that notice to an agent of a corporation is notice to the latter only of matters with-.

in the scope of his agency and not otherwise. Williams v. Dittenhoefer, 188 Mo. 134. (2) There was no waiver by the supreme council of any of its laws, nor is it now estopped from relying on same. (a) Waiver is the intentional abandonment or relinquishment of a known right and the intention to do so is the essential element involved. There was no knowledge on the part of the supreme council of the acts of the local council and hence there could be no intent to waive its by-laws. The contract provided that there could be no waiver. Brix v. American Fidelity Co., 153 S. W. 789; Reed v. Bankers Union, 121 Mo. App. 419; Head v. Insurance Co., 241 Mo. 403; Supreme Lodge, etc. v. Anderson, 142 S. W. 1069; Plumer v. Continental Casualty Co., 77 S. E. 917. (b) The supreme council is not estopped by any action of the local council because it did not know of such action and because Griffith knew that there was no power on the part of the local council to waive the laws of the order and hence could not have been misled. A. S. Robinson was not an agent with an apparent authority to waive the laws of the order so that his knowledge was that of the supreme council. Blodgett v. Perry, 97 Mo. 263; State ex rel. v. Branch, 151 Mo. 622; Hequembourg v. Edwards, 155 Mo. 514; Pounder v. Colvin, 170 Mo. App. 55. (3) Under the contract in this case no officer of a subordinate council nor the subordinate council itself could waive, or dispense with, any of the by-laws of the supreme council. The doctrine of waiver does not apply. Borgraefe v. Knights of Honor, 22 Mo. App. 141; Modern Woodmen v. Tevis, 117 Fed. 367; Harvey v. Grand Lodge, 50 Mo. App. 477; Supreme Lodge v. Keener, 6 Tex. Civ. App. 267; Eaton v. Supreme Lodge, 8 Fed. Cas. 275; McCoy v. Roman Catholic, etc., 152 Mass. 272; Sweet v. Society, 78 Me. 641; Kocher v. Supreme Council, etc., 65 N. J. L. 649. (4) There is no authority justifying a different conclusion than that above stated. The cases relied upon by re-

spondent, namely, McMahon v. Maccabees, 151 Mo. 522; Burke v. Grand Lodge, 136 Mo. App. 450; Oldham v. Modern Brotherhood, 170 Mo. App. 564, must be distinguished because the facts in this case are different.

*Joseph A. Wright* and *John H. Matthews* for respondent.

(1) A chief executive officer of the supreme governing body of a fraternal beneficiary society and a member of the executive committee of such supreme body, by approving the non-observance of a society's laws in the council, binds the society. McMahon v. Knights of Maccabees, 151 Mo. 522; Clair v. Sup. Lodge of Royal Arcanum, 172 Mo. App. 718; Oldham v. Modern Brotherhood, 170 Mo. App. 564; Galvin v. Knights of Father Mathew, 169 Mo. App. 496; Britt v. Woodmen of World, 153 Mo. App. 698; Shartle v. Modern Brotherhood, 139 Mo. App. 440; Burke v. Grand Lodge, 136 Mo. App. 459; Cloverdale v. Royal Arcanum, 193 Ill. 91. (2) Corporations generally, including fraternal beneficiary societies, are chargeable when such knowledge comes to an executive officer, his knowledge being imputed to his principal. 3 Cook on Corporations (7 Ed.), Sec. 727, pp. 2582-84; 2 Thompson on Corporations (2 Ed.), pars. 1645, 1651; Phillips v. Railroad, 211 Mo. 419; Cook v. American Tubing and W. Co., 28 R. I. 41; 9 L. R. A. (N. S.) 193, 212; Orme v. Baker, 74 Ohio St. 337, 354; Atlantic Trust, Etc., Co. v. Union Trust, Etc., Corporation, 111 Vt. 574; Dromgold v. Royal Neighbors of America 103 N. E. 584. (3) In addition to the knowledge which came to A. S. Robinson in the dual capacity of supreme treasurer and member of the executive committee of the supreme council, the laws of the Royal Arcanum expressly vested in him the power of a director of a corporation under the laws of the Commonwealth of Massachusetts, and his knowledge and ac-

tions are conclusive on the corporation, under the Massachusetts authorities. Sec. 22 et seq., Chap. 110, Vol. II, Revised Laws of Massachusetts, 1902; Merchants National Bank v. Citizens Gaslight Co., 159 Mass. 505; 34 N. E. 1083; Beacon Trust Co. v. Souther, 183 Mass. 413; Corcoran v. Snow Cattle Co., 151 Mass. 74; Atlantic Mills v. Indian Orchard Mills, 147 Mass. 268; Parrot v. Railroad, 207 Mass. 184; McGenness v. Adriatic Mills, 116 Mass. 177.

NORTONI, J.—This is a suit on a certificate of life insurance. Plaintiff recovered and defendant prosecutes the appeal.

Plaintiff, an infant, who sues by her next friend, is the daughter of George S. Griffith, the insured, and the beneficiary of the fund under the provisions of the certificate.

The insured defaulted in the payment of a monthly assessment of $2.12 a few days before his death, and it is insisted plaintiff may not recover for the reason the insurance was forfeited because of that fact, through the operation of defendant's by-law. But there is evidence tending to prove defendant waived this by-law, in that it permitted a course of dealing between Compton Hill Council and the insured member which induced him to believe a forfeiture would not be invoked and the assessment would be paid for him by the council unless he was notified to the contrary. There is no controversy about the facts of the case, and the question for consideration relates alone to the waiver of the by-laws referred to through a course of dealing well known to one of defendant's superior officers, its Supreme Treasurer, A. S. Robinson, a member of Compton Hill Council, and a consequent estoppel against defendant to assert the contrary, in view of the fact that the insured, plaintiff's father, relied thereon.

Defendant is a fraternal beneficiary society, incorporated under the laws of the State of Massachusetts, but duly qualified to do business here, under the laws of Missouri. The society it represents is composed of a Supreme Council and numerous local, or subordinate, councils, one of which is Compton Hill Council, located in the city of St. Louis. Compton Hill Council consists of 1056 members. The officers of the local, or subordinate, council elected by it are, among others: a secretary, who keeps a record of the proceedings of the semi-monthly meetings; a collector, who collects the assessments; and a treasurer, who receives the money so collected by the collector and in turn pays it over to the supreme treasurer of the supreme council, A. S. Robinson, whose office is in the city of St. Louis. As before stated, A. S. Robinson, the supreme treasurer of the order, is a resident of St. Louis and a member of Compton Hill Council. The powers and duties of a subordinate council of the order, such as Compton Hill Council, are prescribed by the by-laws of the supreme council, among which is the following:

"The council and its officers, in performing the duties and administering the powers provided by the laws of the order, shall be the agent or agents of the members thereof, and not of the supreme council, and no act or failure to act by the council or by any officer or member thereof, shall create, or be construed so as to create, any liability on the part of the supreme council.

"Neither the council or its officers or any one or more thereof shall waive the performance of, or compliance with, any law or requirement of the supreme council, and such waiver shall be inoperative to bind, or create any liability upon, the supreme council."

The fund from which benefits are paid by the order is derived from the proceeds of monthly assessments. The assessments are payable to the collector of the subordinate council monthly, without notice,

on or before ten o'clock p. m. of the last day of each
calendar month, and the penalty for nonpayment with-
in the prescribed time is *ipso facto* suspension under
defendant's by-law, which, it is asserted, in the in-
stant case, is waived.

Another by-law of defendant provides that a sub-
ordinate council is authorized, out of a fund provided
by it for that purpose, to pay for its members an as-
sessment or assessments as a loan or gift. But with
respect to this matter it is also provided by defendant
as follows:

"A by-law or resolution whereby a council agrees
to pay an assessment for a member as a loan is not
binding upon the supreme council unless it is com-
plied with, and no claim of a member, in case the as-
sessment is not paid, shall be recognized or valid. If
the collector shall omit to pay, within the prescribed
time, an assessment for a member, in compliance with
such resolution or by-law, the member· stands sus-
pended at the expiration of the time for payment."

Compton Hill Council had established a code of
by-laws under the powers conferred upon it by the
supreme council, and one article of these—that is, the
laws of the local council—provided for a special relief
fund, out of which the collector of the council was au-
thorized to pay one assessment for any member who
failed to pay his assessment within the prescribed time,
and if such assessment were paid out of such fund,
to render a bill to the member for the amount, plus
twenty-five cents fee for· the use of this loan fund.
No member was entitled, under the by-laws, to the use
of the fund for a second failure to pay, unless he had
refunded the council the amount of the previous assess-
ment paid by it for him. This fund belonged to the
local council and was under its control, and was not
the property of the supreme council. Section five of
the by-laws of the local, that is, Compton Hill Council,
relating to the special relief fund, is as follows;

"The council shall not pay for any member's assessment from the special relief fund unless he is recommended to be carried by the suspension committee as provided for in this Article, or any member for more than two quarters' dues, except upon the personal application of a member, or the written report of a brother in good standing to the effect that the delinquent is sick or in distress, and this application or report shall be made for each assessment or quarter's dues which a delinquent member is unable to pay."

The evidence is conclusive to the effect that, though these by-laws obtained, no heed was paid to them by Compton Hill Council and its officers, for it carried members, and paid the assessments for them, who were many months in arrears. Indeed, it is said by the secretary of the council that some members owed as much as $50 in assessments at a time, and the council paid for them. Moreover, of the 1056 members of Compton Hill Council, probably 100 were usually in arrears. It appears, too, the supreme treasurer of the order, A. S. Robinson, who was a member of Compton Hill Council and attended its meetings as often as once a month, knew of and acquiesced in this custom and practice, for it had obtained from twelve to fourteen years without protest from anyone.

Though defendant's general by-law provides that each assessment shall be paid on or before ten o'clock p. m. of the last day of the current month, and in event it is not so paid, the membership and the insurance in the order were *ipso facto* forfeited, and though the by-law of the local council provided that no member's assessment should be paid from the relief fund, unless it be recommended by the suspension committee that such member be carried, the local council, with the knowledge of the Supreme Treasurer, A. S. Robinson, by its practice and established custom, reversed the latter rule entirely, for it appears that all members, though in default, were carried indefinitely, and

the payment of assessments made by the council for them, unless the suspension committee recommended otherwise.

The evidence is conclusive, and no one denies it, that the local council had for years permitted its collector to pay out of its relief fund the assessment of every member in default, unless the suspension committee decided that such member should be no longer carried, instead of only paying for the members recommended for that purpose by the committee. Thus the by-law of the council touching this matter was reversed by the practice and custom which obtained, and it appears the insured here had been permitted to fall behind one time more than $20 in his assessments. Indeed, he owed that amount on the first of January and paid a part or all of it some time thereafter before his death. It is conceded, however, that, at the time of his death, he owed but one assessment of $2.12, which should have been paid, according to the by-laws, before ten o'clock p. m. of June 30th, and he died suddenly on July 5th, but five days in default.

Although the local council permitted members to thus become several months in arrears and paid for them, the supreme treasurer for the supreme council received every month the money due for the assessment of every member of the council, except those the suspension committee had decided the council should not carry, as such members, it is said, were suspended. In other words, the council would pay the assessment for all members who omitted to pay it themselves within the proper time, with the exception of those that the collector had been instructed by the suspension committee were suspended.

Plaintiff's father, George S. Griffith, became a member of Compton Hill Council and the order in January, 1903, and continued such for more than eight years, until he died, July 5, 1911. It appears that he had not attended the meetings of the council for some

time and that he was frequently in arrears with respect to the payment of his assessments.

Griffith had but recently been in arrears about $20 and the secretary wrote him a letter in March that unless he paid up he would be suspended. Griffith informed the secretary he would pay up soon, and requested that his insurance be not forfeited. It appears that either Griffith, or some one for him, paid the amount of the arrears, and it is conceded that, at the time of his death, all of his assessments were paid, save the one falling due in June, which was payable, by the terms of the by-laws, not later than ten o'clock p. m. on June 30. The suspension committee met each month, but at no fixed date, and determined what members in arrears the council should not further carry. The practice was to make a list of such members as suspended and furnish it to the collector. This committee did not meet in June, but at the meeting, July 3, 1911, of the council, the suspension committee assembled and decided to drop several members, including the insured, Griffith, and he was accordingly entered on the list then made, as suspended. He died suddenly two days thereafter, with the June assessment unpaid, and without having received any notice whatever of the action of the committee towards suspending him from the order.

It is insisted, on the part of plaintiff, that, though it appears her father, the insured, was in arrears as to the $2.12 assessment from and after ten o'clock p. m. on June 30, his insurance and membership in the order were not *ipso facto* forfeited by virtue of defendant's by-law to that effect, for that the established custom of the local council, with respect to such assessments, which, it is said, was well known to defendant, through the knowledge of its supreme treasurer, A. S. Robinson, both operated as a waiver of the terms of such by-law, and estopped defendant to assert the contrary, until it notified the insured that

the council would no longer pay his assessment and thus afforded him an opportunity to secure his rights in the premises by paying for himself.

On the part of defendant, it is urged that neither a waiver appears nor an estoppel obtains in the case, for it is said the local council was expressly forbidden and inhibited from waiving the defendant's laws or affording a basis for an estoppel by the general by-laws of the order above set forth. There can be no doubt that such is the force and effect of the by-laws of the order relied upon, and if nothing more appeared, the argument would prevail. Where it appears, as here, that the order pointedly inhibits the local council from waiving its rights or affording a basis for an estoppel against it, with respect to matters arising on its insurance contracts, except it appears the order has in some manner authorized the local council in that behalf, no waiver or estoppel may be predicated against it in respect of the acts of such local council or its officers alone. [See Clair v. Royal Arcanum, 172 Mo. App. 709, 155 S. W. 892; 2 Bacon's Benefit Societies (3 Ed.), Sec. 434a.]

But though such be true, no one can doubt that defendant order may waive its by-law requiring prompt payment of the assessment and declaring a forfeiture for a failure in that behalf, if it sees fit to do so. So, too, may the order become estopped by a course of conduct on its part toward the insured members with respect to the payment of assessments, whereby such members are led to believe that a forfeiture of the insurance will not be declared for an omission to pay an assessment promptly, and especially is this true when a long course of dealing under an established custom to the contrary is revealed. The ground of estoppel is fraud, either actual or constructive, and the principle proceeds to either alleviate or repel it. It is said that, to permit the insurer, after having long dealt with the insured, by allowing assessments to be

paid after defaults, to terminate the practice without warning whatever, and declare a forfeiture for a failure to promptly pay, would entail a fraud upon the member so led by usage to rely upon the prior conduct of the insurer. Therefore, if the order, by its conduct, induces the insured to fall into the habit of delaying the payment beyond the time its law stipulates as the day of suspension, it cannot, without warning to him of a change in its business conduct, inflict the penalty of a suspension and forfeit his rights. [See McMahon v. Maccabees, 151 Mo. 522, 52 S. W. 384; Courtney v. St. Louis Police Relief Ass'n, 101 Mo. App. 261, 73 S. W. 878; 2 Bacon's Benefit Societies (3 Ed.), Sec. 431.] That such is the rule which obtains with respect to the order itself is not to be doubted.

But it is said, in the instant case, the order possessed no knowledge of the custom which obtained for so many years in Compton Hill Council by which the by-law of the local council was reversed and members were carried through utilizing the relief fund of the council even though many months in arrears, for the payments were always made each month by the council on account of all members not suspended. It is true defendant order was unadvised with respect to this unless the knowledge of Mr. A. S. Robinson, for more than a year its supreme treasurer, should be imputed to it. It appears Mr. Robinson was an active man in the order and had been a member of Compton Hill Council for many years, and the evidence is positive that he was fully advised concerning this custom which had been followed in the council for twelve or fourteen years. He attended, it is said, about every other meeting of Compton Hill Council and was familiar with its course of dealing with members. Besides being the supreme treasurer of the order, Mr. Robinson was a member of its Executive Committee, which possessed the powers of a board of directors of a corporation under the laws of Massachusetts. As

we understand it, he was, besides being Supreme Treasurer, a member of its board of directors as well, for such was the Executive Committee.

It is the established law that notice to a corporation will be regarded communicated to it, if communicated to any agent having authority to act for it in the premises, or to any agent whose duty it will be to convey the information to its board of directors. [See 2 Thompson, Corporations (2 Ed.), Sec. 1647; see, also Hayward v. National Ins. Co., 52 Mo. 181.] No one can doubt the duty of Mr. Robinson as a director of the corporation to convey such notice as he had concerning this practice to the board of directors of which he was a member. Moreover, the principle is well established that a corporation will be regarded as being advised with respect to the knowledge of facts possessed by one of its officers during the time engaged in its business, and especially as to such facts as pertain to that branch of the corporate business over which the particular officer has some control. [3 Cook, Corporations (7 Ed.), Sec. 727. The by-laws of defendant order provide that "The Supreme Treasurer shall perform all duties relating to the Widows' and Orphans' Benefit Fund, as prescribed in the General Laws of the Order." The benefit funds were derived solely through the assessment on the members, and it is certain that the practice with respect to collecting them was within the purview of the office of the Supreme Treasurer. It is, therefore, clear that the knowledge of the practice and custom which obtained in Compton Hill Council, possessed by its Supreme Treasurer, Mr. Robinson, is to be imputed to the defendant order; and especially is this true in view of the decisions in this State.

In McMahon v. Maccabees, 151 Mo. 522, 52 S. W. 384, the knowledge of the deputy supreme commander, charged with the duty of enforcing the laws of the order, was declared by the Supreme Court to be no-

tice to the defendant order. So, too, in Burke v. Grand Lodge, 136 Mo. App. 450, 118 S. W. 493, knowledge of the deputy Grand Master Workman, who, on one occasion, spoke in the lodge and endorsed its generous conduct toward the members, was imputed to the order itself. In Oldham v. M. B. A., 170 Mo. App. 564, 157 S. W. 92, the knowledge of the State manager of the order, with respect to the course of conduct of a local council, in collecting the dues and assessments after due, was imputed to the order itself. These cases appear to be conclusive on the question here in judgment and especially so in view of the fact that Mr. Robinson acquiesced in the custom of Compton Hill Council in carrying its members without regard to the by-law declaring a forfeiture of their rights if the assessments were not promptly paid, for it is said he never at any time protested, or complained about it.

Under the rule of decision which obtains in Missouri, it is obvious it was competent for the jury to find, as it did, the automatic feature of defendant's by-law terminating the insurance at ten o'clock p. m. on the last day of the month, if the assessment of the member was not then paid, was destroyed, that is, waived, by the established custom so acquiesced in by the order through its supreme treasurer. And, moreover, having thus eliminated this by-law, defendant is estopped from invoking it to forfeit the rights of the insured without notice to him by which an opportunity to pay the assessment was afforded. [See Burke v. Grand Lodge A. O. U. W., 136 Mo. App. 450, 459, 118 S. W. 493; McMahon v. Maccabees, 151 Mo. 522, 52 S. W. 384.]

The judgment should be affirmed. It is so ordered. *Reynolds, P. J.,* and *Allen, J.,* concur.