[No. 8119.]

# HEAD CAMP PACIFIC JURISDICTION WOODMEN OF THE WORLD V. BOHANNA.

1. PRINCIPAL AND AGENT—*Principal Affected by Notice to Agent.* The head camp of a fraternal society is affected by a long established course of dealing between a member and the secretary of the camp with which he affiliates, by which the member is allowed indulgence, and days of grace after maturity, for the payment of his assessments. (547.)

The secretary's knowledge is the knowledge of the head camp. (547.)

By such a course of dealing the member is, notwithstanding the provisions of the constitution to the contrary, continued in good standing for such reasonable time, after the maturity of an assessment, as is sanctioned by such course of dealing and custom. (547.)

2. EVIDENCE—*Presumptions.* Evidence that it had been, for a long time, the custom of a fraternal society to receive from a particular member his assessment, subsequent to its maturity, raises a presumption that in failing to promptly pay an assessment levied next previous to his death he was relying upon this custom. (548.)

*Error to Denver District Court.* Hon. JOHN H. DENISON, Judge.

Mr. GEORGE P. STEELE, Mr. S. S. ABBOTT, for plaintiff in error.

Mr. ISHAM R. HOWZE, for defendant in error.

BAILEY, J., delivered the opinion of the court.

For several years prior to March 15th, 1905, when he died, William Bohanna had been a member of the Woodmen of the World, holding therein a death benefit certificate for $2,000.00. He was affiliated with Silver State Camp, at Denver, of which John H. Bergen was clerk. The society refused to pay the benefit, and Mary Bohanna, his widow, brought this action to enforce collection.

The complaint is in the usual form, and states a cause of action upon the theory that Bohanna died while in good standing. The answer pleaded the provisions of the constitution of the order, which regulates the payment of as-

sessments, and makes prompt payment thereof a condition precedent to good standing, with a resulting delinquency unless so paid. The provisions of the certificates touching these matters are also set up. The defense was based upon Bohanna's failure to pay the February, 1905, assessment, amounting to $2.03. The replication sought to meet the defense by alleging an arrangement, long in force between Bohanna and Clerk Bergen, whereby the payment by Bohanna of his monthly assessments might be made after they became due, such postponements varying in length of time from a few days, to thirty-five or forty, the effect of this plea being that by reason of such arrangement a course of dealing was established, whereby Bohanna was relieved from paying his assessments promptly, and the society estopped from defending upon the ground of such failure, because of waiver. Plaintiff had judgment and the Head Camp brings the case here for review.

The evidence abundantly establishes that, from practically the earliest connection of Bohanna with the society, the custom and practice prevailed of allowing the insured to pay his monthly assessments after due, as it suited his convenience, usually about the 25th of the succeeding month, and in several instances even later. This is shown not only by official receipts of Clerk Bergen, but is supported by the testimony of Bergen himself on cross examination. Bergen testified that under the arrangement with Bohanna he, Bergen, had agreed, out of his own pocket, to advance the money, and promptly pay the monthly assessments on Bohanna's certificate, solely for the accommodation and benefit of Bohanna, which agreement he had carried out up to October, 1904, when he notified Bohanna that he would no longer continue the practice. The record testimony, however, shows conclusively that the money with which these assessments were paid actually came out of the funds of the society, and was not, in fact, paid by Bergen; that while it is shown that Bergen was responsible too, and had to account to the society

for these funds, nevertheless, as a matter of fact, the money so advanced was actually the money of the society itself.

Upon the question of the termination of the agreement to carry Bohanna, Bergen testified that in October, 1904, he notified Bohanna that he would no longer continue to do so, but that he must pay his assessments promptly, and this testimony is corroborated by the testimony of Bergen's son. As against this a witness by the name of Smith testified that, after the death of Bohanna, Bergen said to him, "I wish to God I had carried that man, and had promised I would." So upon the question as to the abrogation of the agreement or custom there was conflicting testimony sufficient to require its submission to the jury.

By the uncontradicted evidence a course of dealing with .Bohanna is established, whereby for years he was permitted to pay his monthly assessments long after they were due, with full knowledge on the part of the Head Camp, for Bergen's knowledge was its knowledge, a proposition fully supported by this court. *Supreme Lodge, Knights of Honor, v. Davis,* 26 Colo. 252, 58 Pac. 595. Was that custom and practice abrogated in October, 1904, as Bergen testified it was? As has already been seen on this point the evidence is in conflict. The jury found that issue against the society, and by such finding this court is bound.

It is firmly established by the decisions of practically every court of last resort in this country, including the United States Supreme Court, that, where by a course of dealing, a company like this has led a member to believe and understand that prompt payment of assessments will not be required, but that they will be received and accepted after due, and that he will be considered in good standing, and will not be required to apply for and secure reinstatement, the company will be held to have waived prompt payment, and the member will be deemed to be legally in good standing for such reasonable time after an assessment is delinquent as has theretofore customarily been allowed him in

which to pay such dues. *Gunther v. New Orleans Cotton Exch. Mutual Aid Ass'n,* 40 La. Ann. 776, 5 South. 65, 2 L. R. A. 118, 8 Am. St. Rep. 554, and note; *Insurance Company v. Eggleston,* 96 U. S. 572, 24 L. Ed. 841; *Modern Woodmen of America v. Tevis,* 111 Fed. 113, 49 C. C. A. 256; *Trotter v. Grand Lodge,* 132 Iowa, 513, 109 N. W. 1099, 7 L. R. A. (N. S.) 569, 11 Ann. Cas. 533, and cases cited; *Sweetser v. Odd Fellows Mutual Aid Ass'n,* 117 Ind. 97, 19 N. E. 722; *United States Indemnity Society v. Griggs,* 118 Ill. App. 577; *Cotton States Life Ins. Co. v. Lester,* 62 Ga. 247, 35 Am. Rep. 122; *De Frece v. N. L. Ins. Co.,* 136 N. Y. 144,, 32 N. E. 556; *Richwine v. La Crosse Mutual Aid Ass'n,* 76 Minn. 417, 79 N. W. 504; *Wallace v. Fraternal Mystic Circle,* 121 Mich. 263, 80 N. W. 6; *Stylow v. Wisconsin Odd Fellows Life Ins. Co.,* 69 Wis. 224, 34 N. W. 151, 2 Am. St. Rep. 738; Bacon on Benefit Societies (3d Ed.) § 431, p. 1083; 29 Cyc. 191.

When by the uncontradicted and undisputed testimony plaintiff established that it was the custom of the society to receive assessments from her husband after due, that raised a presumption that it was because of his reliance upon such custom that he failed to pay promptly the assessment in question. She thus carried the burden of showing such reliance. Under such circumstances it was not error for the court to charge, as it did in instruction 3, to which objection is made, that the burden of overcoming the fact of such reliance was upon the society. Such was the effect and could be the only effect, under the facts of this case, of that instruction. While not happily expressed, still this instruction simply placed upon the defendant, where it properly belonged the burden of overcoming a presumption, arising out of undisputed testimony in favor of plaintiff, and could therefore have been neither misleading nor otherwise prejudicial.

It is contended that because the assessment for the month of February has never been paid the society, upon no theory, is liable. We have already determined that, because

of the custom indulged by the company, of allowing Bohanna to make payment of assessments after due, and usually after the 15th of the succeeding month, that being the day of the month upon which he died, he was then in good standing, since the time of extension to him for payment of overdue assessments had not expired; therefore, although the assessment for February was never paid, it is not a matter which the company will be heard to urge as a bar to recovery. Undoubtedly the amount of this assessment, with interest at the rate of eight per cent per annum since March 1st, 1905, is a proper offset to the judgment, although this has never been claimed, nor the point urged. Neither the payment nor the tender of payment of the assessment after Bohanna's death could have altered the situation, as right of recovery is upheld solely upon the ground that Bohanna, upon equitable considerations, was in good standing at the time of his death.

If mutual benefit societies desire to avoid situations such as this case presents, they must firmly adhere to their constitutions and laws, and insist upon their strict enforcement.

*Judgment affirmed.*

GABBERT, C. J., and WHITE, J., concur.