FRANK E. PAVLICK, Appellant, v. SUPREME
  LODGE KNIGHTS OF PYTHIAS, a corporation,
  Respondent.

St. Louis Court of Appeals. Submitted on Briefs November 6, 1917.
Opinion Filed December 4, 1917.

1. **INSURANCE: Fraternal Benefit Insurance: Forfeiture of Membership by Nonpayment of Assessment.** Where the by-laws of a fraternal order provided that failure to make payment of a monthly assessment, due on the first of each month, before the 20th, should cause forfeiture of the certificate of membership, and membership thereby cease; *ipso facto*, and that membership could be regained only as provided, and a member of the order then surviving failed to pay such assessment, and neglected to apply for reinstatement as required, all he could recover from the order were the amounts paid in by him pending consideration of his reinstatement, for, though the law does not favor forfeitures, when the parties make a specific contract for the doing or not doing of a certain thing, and fail, the courts are bound to enforce the contract as made, unless the party insisting upon forfeiture has waived it or is estopped.

2. ———: ———: **Forfeiture for Nonpayment of Premiums: Waiver.** Defendant fraternal order did not, finally and beyond possiblity of later insisting upon prompt payment under penalty of forfeiture, waive the portion of its by-laws requiring payment of premium before the 20th of each month by accepting premiums after a much later date from time to time during the life of the policy sued on, up to its final insistence upon forfeiture, where, after the association had notice that the member appeared to be in default, it not only gave him opportunity to apply for reinstatement, and assured him he would be reinstated, but urged him to apply, and although accepting payment of assessments after due, it had a right, the member alive, on due notice to him, to refuse to grant like indulgencies in the future.

3. ———: ———: **By-Laws Construed Together.** By-laws of a fraternal benefit order are to be read and construed together.

4. ———: ———: **Waiver of Requirement of Payment of Premium: Question for Court.** Where the facts as to whether defendant fraternal order had waived its requirement of the payment of premiums before the 20th of each month were undisputed, it was for the court to say whether plaintiff member had made a case warranting him in recovering his entire payments, the order having declared a forfeiture and dropped him from membership.

Appeal from the Circuit Court of the City of St. Louis.
—*Hon. Daniel D. Fisher,* Judge.

AFFIRMED.

*C. J. Anderson,* for appellant.

(1). Plaintiff was entitled to recover the full amount paid by him as premiums on this policy, being $266.75, together with interest thereon from the time of each such payment to date. Suess v. Life Insurance Co., 64 Mo. App. 1; Slater v. Supreme Lodge, K. & L. of H., 78 Mo. App. 387; Puschman v. Hartford Life & Annuity Insurance Co., 92 Mo. App. 640. (2) Defendant had waived that portion of the by-laws requiring payment of premiums before the 20th of each month, by accepting such premiums from time to time at a much later date during the entire life of the policy sued on. Keys v. The National Council K. & L. of S.; 174 Mo. App. 671; McMahon v. Maccabees, 151 Mo. 522. (3) Ben Dalzell, who collected the premiums from the plaintiff, was the superintendent of the defendant of the company for the State of Missouri. He was neither the agent for the plaintiff nor was he the agent for the local lodge to which plaintiff belonged. He was the agent for and the state superintendent of the insurance company, and his waiver of prompt payment by plaintiff extending over a period of several years, was binding upon the defendant company. McMahon v. Maccabees, supra; James v. Life Association, 148 Mo. 1; Boward v. Bankers' Union, 94 Mo. App. 442. (4) Defendant claims that plaintiff's insurance was forfeited on account of his failure to pay the premium for the month of March before the 20th of said month. Plaintiff paid the premium for the months of March and April on April 17th. Under section 503 of defendant's by-law this payment should set aside such forfeiture without any further action whatsoever on the part of the plaintiff. (5) Whether defendant had waived its requirement of the payment of plaintiff's premium before the 20th of each month was a disputed question of fact which

should have been decided by the jury, and was not a question of law to be decided by the court. There was a direct conflict of testimony on this point. Keys v. National Council, 174 Mo. App. 671; Stranchon v. Metropolitan Street Railway Co., 232 Mo. 587; Crossett v. Ferrill, 209 Mo. 704; Meily v. Railroad, 215 Mo. 567.

*R. P. & C, B. Williams* for respondent.

(1) The certificate was forfeited by failure of plaintiff to make payment for the month of March, 1912, within the time provided for in the contract and by-laws of the society. Boyce v. Royal Circle, 99 Mo. App. 349-355; Harvey v. Grand Lodge, 50 Mo. App. 477; Chadwick v. Triple Alliance, 56 Mo. App. 463; Lavin v. Grand Lodge, 104 Mo. App. 1; Borgraeft v. Supreme Lodge, 22 Mo. App. 127; Day v. Woodmen Circle, 174 Mo. App. 260-269; Pauley v. Modern Woodmen, 113 Mo. App. 473. (2) There was no waiver of the provision of the by-laws for prompt payment of the monthly rates. Proof that the local secretary indulged the member at times by remitting the amount to the head office and later collected from the member did not tend to fix any right in the member to pay at any time other than that fixed by the contract; nor would the practice of accepting the payment, after suspension, by the local officer, have this effect, unless the head office had knowledge of the practice. Lavin v. Grand Lodge, 104 Mo. App. 1-19; Boyce v. Royal Circle, 99 Mo. App. 349; Marchall v. Grand Lodge, 133 Calif. 686. (3) The contract in this case expressly provides that no subordinate officer has any right or power by any statement, agreement, promise or manner of transacting business to waive the provisions or requirements of the contract, or the laws rules and regulations of the defendant. This provision of this contract is binding on the defendant, and put it without the power of any subordinate officer to waive any requirement of the contract. Brittenham v. W. O. W., 18 Mo. App. 523-534; Day v. Supreme Council, 174 Mo. App. 260; Lavin v. Grand Lodge, 112 Mo. App. 1; Clair v. Royal Arcanum, 172 Mo. App. 709;

Session Acts 1911, page 292, sec. 22; Knade v. M. W. A., 171 Mo. App. 377-383. (4) Section 502 of the by-laws of defendant provided that failure to make payment on or before the 20th day of each month shall cause, from and after such date, a forfeiture of the certificate of membership and all rights thereunder; section 512 of the by-laws of defendant provides that this provision of the by-law cannot be waived by a subordinate officer, and specially provides receiving the money after the suspension is not a waiver. These laws are binding on the plaintiff. Session Acts 1911, p. 292, sec. 22; Hartman v. Knights & Ladies, 190 Mo. App. 92; Thompson v. M. B. A., 189 Mo. App. 15-18. (5) A member of a fraternal society who has been suspended can be reinstated only in strict conformity with the by-laws, rules and regulations at the time of reinstatement, and has no rights until an actual reinstatement has taken place. Edgerly v. Ladies, etc., 151 N. W. 692 (Mich); McLaughlin v. Supreme Council, 68 N. E. 344 (Mass); Odd Fellows v. Ivy, 62 So. 423 (Miss.); Munhak v. Grand Lodge, 133 Calif. 686. Adacs v. Grand Lodge, 66 Neb. 389.

REYNOLDS, P. J.—Plaintiff instituted this action against the defendant before a justice of the peace, filing a statement, in which he sets out that the defendant is an insurance company authorized to do business in this State, and that he became a member and took out a policy in the insurance department of the defendant in June, 1897, at the rate of one dollar a month, paying thereon at that rate and at a rate which from time to time was increased until June 1, 1908, when his premium was placed at $1.95 a month, he continuing to pay, as he avers in his statement, until July 12, 1912. He avers that after the month of July, 1912, he tendered the sum of $1.95 per month to the defendant from time to time, which it refused to accept. Averring that during all the times stated he had complied with all the terms, conditions and requirements of the insurance contract, and that the defendant, without just

cause or any cause, had cancelled his policy of insurance, thereby depriving plaintiff of the benefits thereof, and that during the time of the issuance of the policy in 1897 and until July 12, 1912, he had paid a total of $276.75, plaintiff prayed for judgment for that amount, with interest from the date of each of the payments, at the rate of 6 per cent per annum and for his costs.

There was no pleading by defendant.

Judgment going against plaintiff in the justice's court, he appealed to the circuit court, where the cause was tried before the court and a jury. The jury returned a verdict in favor of plaintiff in the sum of $9.75, the amount which the court instructed the jury plaintiff was entitled to recover. Judgment being entered in favor of plaintiff for that amount, he filed a motion for a new trial which was overruled and, saving exception, he has duly appealed to our court.

At the trial of the cause plaintiff changed the statement of the amount he had paid from $276.75 to $266.75.

There was evidence to the effect that the policy had been cancelled by defendant for plaintiff's failure to pay the assessment due March 1, 1912, but payable March 20th, and that plaintiff, insisting that the forfeiture had been made unlawfully, although requested by defendant to apply for reinstatement, failed to make application. Pending the controversy between plaintiff and defendant as to whether this forfeiture was legal, plaintiff had paid to defendant the $9.75, which defendant, at the trial before the justice and again at the trial in the circuit court, had tendered plaintiff, and it is for this amount that the court directed the jury to find a verdict in favor of plaintiff.

It appears that plaintiff not having paid the March assessment of $1.95, which should have been paid on or before the 20th of that month, gave a check to the order of B. W. Dalzell, of date April 17, 1912, for $3.90, intending that to be applied as payment for the assessments of March and April, 1912. While this check was dated April 17th, it was not delivered to the payee un-

til April 20, 1912. It was indorsed by the payee and, passing through various banks in St. Louis, was finally paid by plaintiff. It further appears that on two or three, or possibly more, occasions prior to this, plaintiff had not paid the assessment in the month in which it fell due but had given checks to Dalzell, payable to the order of Dalzell, in the second month and within the time required for the payment of the assessment for the second month. It was in evidence that Mr. Dalzell was secretary of what is known as section 33 of the Order, to which section plaintiff belonged, and was also in the employ of the Supreme Lodge of the Order as State Superintendent of the defendant for Missouri. What his powers and duties were as superintendent, nowhere appears. It also appears that under an arrangement between Mr. Dalzell and plaintiff, Dalzell, on several occasions, had personally advanced the money due for the monthly assessment against Pavlick, sending it on to the officers of the Supreme Lodge as if paid in due time by plaintiff, and in this way taking care of plaintiff's payments, so that as far as the Supreme Lodge was concerned, plaintiff did not appear to be in default, nor does it appear that Dalzell had ever reported to the Supreme Lodge that he (Dalzell) was making these advances, he sending the money on within the time it was due as if then paid by plaintiff. Dalzell, as before noted, did this on several occasions, but it happened that when this March assessment fell due, Mr. Dalzell being absent from his office and from the city of St. Louis, his clerk, who was then in charge of his office, in due course, and about March 31, 1912, reported plaintiff to the Supreme Lodge as in default for the March assessment. No action appears to have been then taken by the Supreme Lodge, but under section 502 of the laws of the Order, to be hereinafter set out, plaintiff became automatically suspended and would have to apply for reinstatement. Afterwards, and on April 20, 1912, plaintiff having then paid $3.90 for the assessment due in March and for that due in April, and acting under section 512 of the Order, to

be hereinafter set out, Dalzell, as secretary but by his clerk issued this receipt:

"Insurance Department, Knights of Pythias,

St. Louis, Mo., April 20, 1912.

Received of F. A. Pavlick, Three 90/100 Dollars. This receipt is given subject to the action of the Board of Control, Insurance Department, Knights of Pythias, on application for cancellation of forfeiture now pending. The amount herein stated will be returned if said applicaton is not accepted.

BEN W. DALZELL, Secretary.

L. BISCHOFF."

It would seem from this that the fact that plaintiff had been reported to the Supreme Lodge as in default in payment of the March assessment, was overlooked by Mr. Dalzell's office when this receipt was given. Being then advised of plaintiff's default in payment of the March assessment, and under date of April 23, 1912, the president of defendant wrote to plaintiff to the effect that he regretted to advise him that they had failed to receive his payment for the month of March, and that he inclosed "herewith a blank application for reinstatement or cancellation of forfeiture," which plaintiff was requested to fill out, sign and return with his payment for the month of March in an inclosed stamped envelope and upon receipt of same he would be reinstated as a member of the insurance department in good standing, the rest of the letter calling attention to the strong features of the defendant organization as providing insurance for the protection of the beneficiaries of members. The letter concludes with the statement that the president, speaking for the Supreme Lodge, cannot believe that plaintiff "desires to sever his membership in the Order at this time." In this first blank application for reinstatement sent, which is not in evidence in full, it does not appear that a medical examination was required. Plaintiff, however, failed to pay any attention to the letter or to forward any application for reinstatement. In May and again in June, 1912, Mr. Dalzell took an application blank similar to that which had been inclosed to plaintiff and

which he had been requested to sign, to plaintiff's place of business and asked him to sign it and attempted to explain what it meant to him, but plaintiff would not listen to any explanation, would not read the application himself, and declined to allow the secretary to read it to him. The secretary testified that as far as he knew plaintiff had never been asked to submit to a medical examination and that in urging plaintiff to sign the application for reinstatement, he told plaintiff it was a mere matter of form; that if the application was made within a certain time no medical examination was required but after that one was required. The secretary sending on money which had been paid him by plaintiff after he had forfeited his membership, as it was claimed, the officers of the Supreme Lodge refused to receive it and returned it to the secretary.

The secretary, Mr. Dalzell, testified that when plaintiff had been in default previously he (the secretary) had paid his assessments personally and when plaintiff gave him a check for the amount of two assessments, if that was the number he owed, he (Dalzell) had deducted from the proceeds of the check the money that was coming to him and forwarded the amount due for the month to the Supreme Lodge, not advising it of the fact that plaintiff had not himself paid it or that he had been in default and that he was advancing this money for him. He stated that if he had been at home when the March payment fell due he would have sent it on himself, as he had done before, and trusted to plaintiff to repay him, which before then plaintiff had always done.

One of the laws governing the insurance department of the Order in force at the time, No. 503, provides that the Board of Directors of the Society shall have power at any time during the calendar month in which any benefit certificate has been forfeited for non-payment of the regular monthly payment or assessment, "or at any time during the calendar month immediately succeeding the month in which such forfeiture has occurred, to cancel such forfeiture and to re-admit the former member and renew and restore his former con-

tract upon payment of all arrearages. If any such forfeiture shall have occurred and continued to exist until the first day of the second calendar month succeeding the month in which such forfeiture has occurred, the Board of Control shall have the power, within the next thirty days after the lapse of said time, to cancel such forfeiture and to re-admit such former member and renew and restore his former contract upon the payment of all arrearages, upon its being made to appear to the satisfaction of the Board that such member is in good mental and physical health.''

It was under this law that the blank application for reinstatement was sent to plaintiff in April, 1912, and under the power conferred by this section that the Board offered to reinstate plaintiff upon his making application and without requiring a medical examination. If plaintiff had applied in April, or within the month succeeding the forfeiture, a medical examination would not have been required. Failing to apply in April, or the succeeding month, the Order offered to reinstate him if he accompanied his application with a medical certificate. In fact, the president not only offered to reinstate plaintiff in April, but urged him to apply for reinstatement.

Section 502 of the laws of the Order, read in evidence, provides, in part:

''Forfeiture of Membership.—The regular monthly payments and assessments of all members of the Insurance Department shall be due and payable to their respective Section Secretaries without notice in advance, on the first day of each and every month, and the failure to make such payment on of before the 20th day of each month shall cause from and after such date a forfeiture of the certificate of membership and all right, title and interest such member or his beneficiaries may have in and to the same, and membership shall thereby cease *ipso facto* . . .

''In case of forfeiture under the above section, membership may be regained only in the manner provided by law.''

Section 512, also read in evidence, provides:

"The receipt and retention of payments and assessments from members by the Insurance Department shall not constitute a waiver of any law of the Supreme Lodge or defense which might be relied on had such payments not been received and retained. No course of dealing between members and officers, whether persisted in for a long or short time, shall waive this provision or the effect of same; all of said laws enacted by the Supreme Lodge, having been enacted by it on its representative and legislative capacity only, in which every member is a party, are intended to bind all members at all times."

On these facts we find no error in the action of the trial court in instructing the jury that all the plaintiff could recover were the amounts he had paid in pending the consideration of his reinstatement and that amount was correctly stated in the direction which the court gave to the jury and as found by the jury.

It is true that the law does not favor forfeitures but when parties make specific contracts for the doing or non-doing of a certain thing and fail, then the courts are bound to enforce the contract as made by the parties themselves, unless the party insisting on a forfeiture has waived it or is estopped by his own acts. [McMahon v. Supreme Tent Knights of Maccabees, 151 Mo. 522, 52 S. W. 384; Oldham v. Modern Brotherhood of America, 170 Mo. App. 564, 1. c. 568, 157 S. W. 92.]

It is claimed by learned counsel for appellant that defendant had waived that portion of the by-laws requiring the payment of premiums before the 20th of each month by accepting such premiums from time to time after a much later date during the entire life of the policy sued on. McMahon v. Supreme Tent Knights of Maccabees, supra, and Keys v. Knights and Ladies of Security, 174 Mo. App. 671, 161 S. W. 345, are cited in support of that proposition. Undoubtedly, these cases state the law but on their facts they do not apply to the case at bar.

In Griffith v. Supreme Council of the Royal Arcanum, 182 Mo. App. 644, 1. c. 657, 166 S. W. 324, there was an

arbitrary forfeiture of plaintiff's membership or of his rights without notice to him and an opportunity being given him to pay up back assessments, and we there held a forfeiture would not be sustained. It was there held that because of such arbitrary action, the forfeiture would not stand. But we have no such case here. Here it is in evidence that after the governing body of the Order had notice that plaintiff appeared to be in default in the making of the payment due in March, it not only gave plaintiff an opportunity to apply for reinstatement, and assured him that he would, on application, be reinstated, but urged him to apply.

The cases cited were cases in which, after the death of the member, the Order had attempted to enforce a forfeiture in the face of acts by its officers which amounted, in law, to a waiver of strict compliance with the laws of the Order. As said in the Oldham Case, supra (l. c. 569), an Order such as this "will not be allowed to suddenly turn upon deceased in his last sickness and demand a forfeiture on account of the same conduct it had customarily forgiven and overlooked."

It is further claimed by learned counsel for appellant that under section 503 of defendant's by-laws, it was the duty of defendant to reinstate plaintiff's policy on April 20th, when plaintiff paid all arrearages; these arrearages having been paid during the calendar month next following the month in which the forfeiture occurred. We have set out that section and do not find that this contention receives any support under it. It is to be read in connection with section 502.

It is finally urged by learned counsel for appellant that whether defendant had waived its requirements of the payment of plaintiff's premium before the 20th of each month, was a disputed question of fact, which should have been decided by the jury and was not a question of law to be decided by the court, there being, as that counsel claims, a direct conflict of testimony on this point. But that same counsel, in his printed argument filed with us, stating the facts practically as we have done, says that the evidence as to the facts is undisputed. On those facts,

it was for the court to say whether plaintiff had made out a case warranting him in a recovery of the amount he claimed. The court very correctly held that on the case made, as a matter of law, plaintiff could only recover a part of it and so instructed the jury. We see no error in this.

To repeat, and in conclusion, the defendant Order gave plaintiff, living, every opportunity to be reinstated. Admit that by its course of dealing with plaintiff it had waived the prompt payment of assessments in several months, surely it cannot be that it must continue in that practice indefinitely. It surely has the right to discontinue doing so on notice to a member, that it will thereafter stand on the letter of its law, which, as in an Order such as this defendant, plaintiff with his fellow members has assisted in making. If it then gives a member reasonable notice and an opportunity to become reinstated, as this defendant did, and if, as here, the member refuses to accept and avail himself of the offer, he cannot complain if the defendant insists on its right to declare a forfeiture. The judgment of the circuit court is affirmed. *Allen* and *Becker, JJ.,* concur.