SUPREME LODGE, K. P., v. HOOPER.*
(No. 9559.)

(Court of Civil Appeals of Texas. Dallas. March 8, 1926. Rehearing Denied March 27, 1926.)

1. Insurance ⟨⟩755(4)—General custom of fraternal beneficiary society in accepting dues during month of maturity or succeeding month held waiver of right to declare forfeiture on death of assured prior to making such payment.

General custom of fraternal beneficiary society with its members, whereby, notwithstanding "ipso facto forfeiture" provision of insurance contract, it accepted payment of dues from members during month of maturity and at any time during succeeding month without claiming forfeiture, *held* waiver of right to declare a forfeiture of policy on death of assured prior to making such payment.

2. Evidence ⟨⟩66—General custom of fraternal beneficiary society to waive prompt payment of dues held presumed known to its members, especially those of long standing.

Presumption will be indulged, nothing to contrary appearing, that general custom of fraternal beneficiary society to accept payment of dues from members during current month of maturity and at any time during succeeding month without claiming forfeiture was known to its members, especially to those of long standing.

3. Insurance ⟨⟩755(4)—Certificate of insurance is not forfeited by failure to pay an assessment according to contract, where general custom leads member to believe that strict observance of requirement as to time of payment is not required.

Where mutual benefit association has in repeated instances received from a member payment of overdue assessments, so as to establish a custom of dealing between parties and lead member to believe that strict observance of requirement as to time of payment is not required, certificate of insurance is not forfeited by failure to pay an assessment according to contract, provided it is paid within customary period of extension of time of payment.

4. Insurance ⟨⟩815(1)—Petition held to allege waiver by fraternal beneficiary society of prompt payment of dues that accrued under policy.

In suit on life insurance policy against fraternal beneficiary society, petition *held* sufficiently to plead waiver by insurer of prompt payment of dues.

5. Insurance ⟨⟩755(4)—Fraternal beneficiary society, in view of general custom of dealing, waiving right to declare forfeiture, could not without prior notice insist on forfeiture for failure to pay dues when required.

Where fraternal beneficiary society, by reason of general custom, waived provision of insurance contract giving right to claim forfeiture for failure of assured to pay monthly dues when required, and assured and his agent were justified in relying on such custom, insurer could not without prior notice insist on a forfeiture of policy for nonobservance of such waived requirement.

Appeal from District Court, Grayson County; Silas Hare, Judge.

Action by Mrs. Julia E. Hooper against the Supreme Lodge, Knights of Pythias. Judgment for plaintiff, and defendant appeals. Affirmed.

Head, Dillard Smith Maxey & Head, of Sherman, S. H. Esarey, of Indianapolis, Ind., and Raymond Buck, of Fort Worth, for appellant.

Freeman, McReynold & Hay, of Sherman, for appellee.

LOONEY, J. This suit was instituted by Mrs. Julia E. Hooper against the Supreme Lodge, Knights of Pythias, on a certificate of membership in the nature of an insurance policy in the sum of $3,000, issued by said order to John R. Hooper, the husband of appellee, in which she was named as beneficiary. On November 13, 1921, John R. Hooper was drowned. Appellee made claim for the amount of the policy. Payment was refused by appellant, on the ground that the October, 1921, assessment or premium was never paid, and that the policy became ipso facto forfeited after the 20th of the month.

Appellant answered the suit by alleging, among other things, that the policy had become forfeited by reason of the nonpayment of the October, 1921, dues, and in this connection set up at length the provisions of the policy and by-laws, requiring payment of dues and providing for forfeiture in case of nonpayment. By supplemented petition, appellee pleaded waiver of forfeiture, if any really occurred. At the conclusion of the evidence, over the objections and exceptions of appellant, a verdict was instructed for appellee, and accordingly judgment was rendered in her favor, from which appellant prosecutes this appeal.

By appropriate assignments and propositions, appellant complains of the action of the court in peremptorily instructing the jury to return a verdict for appellee; its contention, among other things, being that, the evidence was sufficient to raise an issue as to the nonpayment by assured of the October, 1921, assessment, and that in this status the question presented was for the jury to decide, and not for the court.

⟨⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error refused May 5, 1926.

[1] This contention of appellant is in our opinion well taken, and, if the decision of the case turned on that question, it should be reversed and remanded; but this issue becomes immaterial, in view of the larger question of waiver presented for our consideration. Appellee insists that, even though the assessment of October, 1921, was not paid according to the terms of the contract, appellant is estopped to claim a forfeiture of the policy, in that by a course of conduct or custom of doing business it had waived the right to invoke this forfeiture provision of the contract.

Assured had been a member of the endowment rank of the Knights of Pythias for over 40 years, and as such was the holder of the certificate sued on. The monthly payments on the policy were $20.85, but by reason of a loan against the policy of $270, made by appellant to the assured, the payments were reduced, beginning September 1, 1919, by $9 per month; thereafter the amount to be paid monthly was $11.85. The policy provided that the charter, laws, and regulations of the society governing the insurance department should constitute a part of the contract between the member and the society. It further provided that the monthly payments should be due and payable, without notice in advance, on the 1st of every month, and that failure to make payment of such dues on or before the 20th of the month would ipso facto forfeit the policy.

Under sections 419 and 520 of the by-laws of appellant, a certificate lapsed in case of nonpayment of dues on or before the 20th of the month, and only appellant's board of control could consider such forfeiture, readmit the former member, renew and restore the contract upon payment of all arrearages during the month of delinquency, or during the succeeding month. It had been the habit of John R. Hooper, prior to December, 1920, to make payments of his monthly dues to the secretary of the local lodge at Dallas. Subsequent to that time all payments were made for him by his son, J. J. Hooper, of Lexington, Ky., who made remittances direct to the insurance department of the Supreme Lodge at Indianapolis, Ind.

The issue of fact in regard to the nonpayment of the dues for October, 1921, relates back to October, 1920. During the month of November, 1920, two premiums were paid by assured, one on the 19th and the other on the 23d of the month, which, as contended by appellee, paid dues for the months of November and December, 1920, but, as contended by appellant, the dues for the month of October were at the time delinquent, so the payment of November 19th was applied to October, and the one of November 23d was applied to November, leaving December delinquent, when J. J. Hooper, son of assured, took over the business of paying dues on the policy direct to the Grand Lodge.

The view of the evidence most favorable to appellant is that, when J. J. Hooper took charge of the matter, assured was delinquent for the month of December, 1920, and that payments thereafter were made and applied as follows: January 12, 1921, credited to December, 1920; January 24, 1921, credited to January, 1921; March 8, 1921, credited to February, 1921; April 27, 1921, two payments credited to the months of March and April; June 24, 1921, credited to May; July 6, 1921, credited to June; August 5, 1921, credited to July; the payment for September was waived, and the last payment, October 25th, was credited to the month of August.

Appellant uniformly acknowledged receipt of payments, evidently on blank forms used for that purpose, four of which were in evidence, and in each the following language appeared:

"If, upon auditing your account, this amount is found to be incorrect, you will be notified."

The undisputed evidence, according to our view, established the fact that appellant maintained a general custom or habit of dealing with its members, whereby, notwithstanding the "ipso facto forfeiture" provision of the contract, it accepted payment of dues from members during the current month of maturity, and at any time during the succeeding month, without claiming or entering on its records any evidence of forfeiture, and without invoking the action of its board of control; in other words, an assessment overdue after the 20th of the month could be paid at any time during that month or the succeeding month, without anything else ado, and the policy under these circumstances was uniformly treated by appellant in all respects as valid and subsisting.

[2] The presumption will be indulged, nothing to the contrary appearing, that this general custom or course of dealing was known to its members, and especially to members of long standing. In addition, it was shown that J. J. Hooper, son of assured, who undertook the responsibility of paying these monthly dues, received from appellant during the year 1921 two letters, one of date June 21, and the other August 18, in which this course of dealing was made evident. Hooper made request for a statement of the account, and was informed in these letters that payments made by him during these months, to wit, June and August, were applied to the past-due assessments for the preceding month, respectively. The June letter concluded with this language: "Your June assessment now being due in this office." Again on August 23, 1921, appellant wrote assured, addressing him as "Dear Sir and Brother," to the effect that the September payment on the policy had been waived.

Although there existed at the time of this correspondence a controversy between Hooper and the appellant as to the proper applica-

tion of these payments, Hooper insisted that he was not in default, and that payments should be credited to the dues of the month when paid, whereas appellant contended that, when the remittances were received, they were applied to the payments of the dues for the preceding month, because at that time they stood delinquent. However, as to that controversy it is immaterial, as we view the matter, who was correct. The custom pursued by appellant in dealing with its members was calculated to lead assured and J. J. Hooper to believe that appellant would not insist upon a strict compliance with the terms of the contract, and that payment of dues could be made at any time during the month of maturity or during the succeeding month, without incurring any danger of having the forfeiture provision of the contract invoked.

At the date of each of these letters the policy stood in a forfeited condition; that is, if the literal terms of the contract had been invoked. But no forfeiture was ever declared or entered on any record of appellant, nor was forfeiture mentioned anywhere in the correspondence; neither was any notice ever given, so far as the record shows, that appellant insisted upon, or would insist upon, a literal compliance with the contract. If the death of assured had occurred on any day after December 20, 1920, appellant could with equal reason and consistency have claimed, as it is now claiming, that the policy had been forfeited prior to his death, yet during all that time the contract was treated as valid for the purpose of collecting premiums, and it seems the defense now being urged was held in reserve, to mock the beneficiary when misfortune should overtake her.

[3] This provision was inserted in the contract by appellant for its own benefit, and, of course, it was at liberty to waive it, and, in our opinion, did waive it, by this general custom or method of business. The law applicated to these facts is announced in 19 R. C. L. § 74, pp. 1274, 1275, as follows:

"Where a mutual benefit association has, in repeated instances, received from a member the payment of overdue assessments, so as to establish a custom of dealing between the parties, and lead the member to believe that a strict observance of a requirement as to the time of payment is not required, it is held that the certificate of insurance is not forfeited by failure to pay an assessment at the time when the by-laws of the society or a stipulation in the certificate requires it to be paid, provided it is paid within the customary period of extension of the time of payment, for the association is estopped by its course of conduct from claiming a forfeiture according to the strict letter of its contract. * * * and it must be shown that the delinquent member had notice of the practice and relied thereon."

This statement of the law is well supported by decisions from the courts of different states. First Texas State Insurance Co. v. Capers (Tex. Civ. App.) 183 S. W. 794; Trotter v. Grand Lodge, Iowa Legion of Honor, 109 N. W. 1099, 132 Iowa, 513, 7 L. R. A. (N. S.) 569, 11 Ann. Cas. 533; Knights of Maccabees v. Pelton, 121 P. 949, 21 Colo. 185; Andrus v. Fidelity Mutual Life Insurance Association, 67 S. W. 582, 586, 168 Mo. 151; Griffith v. Supreme Council Royal Arcanum, 166 S. W. 324, 182 Mo. App. 644; Bruns v. Milk Wagon Drivers Union (Mo. App.) 242 S. W. 419; Ætna Life Insurance Co. v. Fallow, 77 S. W. 937, 110 Tenn. 720; Ind. Order of Foresters v. Cunningham, 156 S. W. 193, 127 Tenn. 521, 5 A. L. R. 1569; Head Camp, etc., Woodmen of the World, v. Bohanna, 151 P. 429, 59 Colo. 545. We conclude therefore, that the court did not err in directing a verdict for appellee.

[4] Appellant assigns as error the action of the court in overruling its special exception to that part of the supplemental petition of appellee setting up a waiver by appellant of the prompt payment of the dues that accrued under the policy, in that no facts were alleged constituting waiver. The allegations of the supplemental petition, at which these exceptions were directed, are in substance that appellant accepted all payments of dues made during the year 1921 from January to October, inclusive, without protest or complaint, and without notice being given of an intention to claim a forfeiture of the policy; that it had promulgated rules, regulations, and customs generally observed in dealing with its members, according to which payments had been accepted during the current month or thereafter, which rules and customs were observed in dealing with the assured; that on October 25, 1921, appellant accepted payment of dues by check, though made after the 20th of the month, and gave no notice of an attempt to forfeit the certificate, and thus recognized its validity; that it accepted payments for June, July, August, and October, 1921, and by written notice expressly waived payment for the month of September, thus recognizing the validity of the certificate, and waived forfeiture, that by this general custom, course of conduct, and in accepting payments made by the assured continuously until the time of his death, it recognized the validity of the contract, waived the provisions of its constitution and by-laws, and was estopped to deny the validity of the certificate or the right of appellees to recover. These allegations, in our opinion, constituted a sufficient plea of waiver, and were not subject to the exceptions urged.

Appellant further insists that the court erred in overruling its special exception to the supplemental petition of appellee, alleging that no notice was given to the assured or beneficiary that the certificate would be forfeited by appellant, and further that the court erred in admitting, over its objection, the evidence of J. J. Hooper to the effect that appellant gave him no notice in regard to the

forfeiture of the policy. The contention under these assignments is that as the policy, according to the terms of the contract, became ipso facto forfeited for failure to pay dues on the 20th of the month, no notice of forfeiture or of an intended forfeiture was necessary.

[5] The rulings of the court in the respects under consideration were not, in our opinion, erroneous. Appellant, by reason of this general custom or course of dealing, waived the provision of the contract that gave it the right to claim a forfeiture for failure of the assured to pay monthly dues on or before the 20th day of the month. Assured and J. J. Hooper, his agent, were justified in relying on this custom or course of business; consequently appellant could not without prior notice insist on a forfeiture, or an intended forfeiture, of the policy for the nonobservance of this waived provision of the contract. The authorities hereinbefore cited fully sustain this view.

Having carefully examined and considered all assignments and propositions, and finding no error, the judgment below is affirmed.

Affirmed.

### On Motion for Rehearing.

Appellant, in the argument appended to its motion for rehearing, among other things, says:

"We shall not at any length argue this case, for in our brief, and in our reply to appellant's brief, we discuss the case very fully. There is one point, however, to which we do desire to call the court's attention, a point which is not touched upon in their opinion, and which, in our judgment, is the crucial point in the case. That is this: That although the custom established by the Supreme Lodge of accepting a member's dues within a given period operated an estoppel on the lodge, forbidding it to refuse to accept those dues within that period—was a waiver of its right to declare a forfeiture so long as the member was living and tendered his dues within such period —yet this by no means forced the lodge to accept the dues within such period after the death of the member, or not to insist upon a forfeiture of the policy after such time.'"

We gave careful consideration to the point stressed by appellant in the excerpt just quoted. We held with reference to this point, and thought we had indicated our holding, to the effect that, by reason of the general custom or course of dealing with its members, appellant had waived and was estopped to assert the provision of the contract that gave the right to forfeit the policy for failure of assured to pay monthly dues on or before the 20th of the month. Our holding was not simply that the association had estopped itself from refusing to accept the dues from such member while alive, when tendered within the time established by the custom for payment of dues; but it went much further, and was to the effect that appellant, having waived the provision of the contract, was estopped to claim a forfeiture of the policy on the death of assured, occurring prior to making such payment. Under the course of dealing maintained by appellant, the assured was permitted to pay the dues upon his policy at any time during the month of maturity, or during the succeeding month, without incurring any danger of having his policy forfeited. To state our view in a different way, appellant had by this course of dealing taken the "ipso facto forfeiture" provision from the contract, and it stood at the death of the assured as though no such provision had ever existed.

Even if it be true, as claimed by appellant, that assured failed to pay the October assessment on or before October 20th, under the established course of dealing he could have paid the same at any time prior to December 1st without danger of forfeiture; so at the time of his death, on November 13, 1921, the policy was a valid subsisting contract, assured was in good standing, and had to his credit 17 days of grace within which to make payment. This view is sustained by the authorities cited in the original opinion, and was well expressed by the Supreme Court of Colorado in Head Camp, etc., v. Bohanna, 151 P. 428, 59 Colo. 548, as follows:

"It is contended that, because the assessment for the month of February has never been paid, the society upon no theory is liable. We have already determined that, because of the custom indulged by the company, of allowing Bohanna to make payment of assessments after due, and usually after the 15th of the succeeding month, that being the day of the month upon which he died, he was then in good standing, since the time of extension to him for payment of overdue assessments had not expired; therefore, although the assessment for February was never paid, it is not a matter which the company will be heard to urge as a bar to recovery."

We have carefully considered appellant's motion for rehearing, but, finding no reason to change our original decision, the motion is overruled.