MERAMEC TRUST COMPANY, A CORPORATION, RESPONDENT, v. JANE CHESTER JOHNSON, EXECUTRIX OF THE LAST WILL AND TESTAMENT OF S. H. JOHNSON, DECEASED, APPELLANT.*

St. Louis Court of Appeals. Opinion filed February 21, 1927.

**1.—Trust Companies—Capital Stock—Subscriptions—Unpaid Balance —Liability.** A statement of the president and director of a trust company to the board of directors of such company at the time of his resignation which amounted to a statement of his then intention to sell all of his stock, even if given as notice that he had sold his stock, was not sufficient to put the corporation on notice that he was the owner of stock which stood on the books of the company in the name of defendant, a former owner, so as to relieve defendant from liability for the unpaid balance due on such stock on the ground that, since more than one year had elapsed since defendant sold his stock, he was not liable for the said balance under the provisions of section 11794, Revised Statutes 1919.

**2.—Corporations—Capital Stock—Subscription—Unpaid Balance—Liability of Transferor.** In general, the transferor of corporate stock is not released from liability for an unpaid balance of the subscription price of stock sold

until the transfer is duly registered in the corporate books, and that until such transfer has been recorded in the transfer books of the corporation, the transferee cannot be duly recognized as a stockholder and is not chargeable with the unpaid balance of the subscription, though the transferee is bound, however, to protect and indemnify his transferor.

3.—**Trust Companies—Vendor of Stock—Liability for Unpaid Portion— Statute.** In this State, the rule that liability for any unpaid portion of the capital stock of a trust company on the part of one who appears on the books of the corporation as the owner thereof, where such stock has been sold but no notice given to the corporation of such sale, has been modified by section 11794, Revised Statutes 1919, which limits the liability of the vendor to that of an endorser "for whatever is still due on such shares" for one year after notice to the corporation of such sale or transfer, and if no call is made for any or all of, "whatever is still due on such shares" within one year after notice to the corporation of such sale or transfer, the vendor is released from any and all liability for any unpaid balance due on such stock.

4.—**Same—Same—Same—Private Transactions—Transfers—Notice—Knowledge of Officers.** Where sales of trust company stock which stood on the books of the company in the name of defendant were admittedly private transactions between defendant and the president and secretary of such company, and in each case the interest of the transferor in the matter of the purchase and sale was antagonistic to the interests of the company in that both the president and secretary, by permitting the stock to remain in the name of defendant on the books of the company, made him instead of them primarily liable for the unpaid subscription, and as such knowledge of the transactions not having come to the president or secretary of the corporation in their official or representative capacity, but through their private transactions and beyond the range of their official duties and in a matter in which their interest was antagonistic to the interests of the corporation, their knowledge was not knowledge on the part of the corporation even though they were at the time the managing agents of the corporation.

5.—**Same—Same—Same—Evidence—Sufficiency.** In an action against a stockholder of a trust company for unpaid subscription of stock which he had sold, but which transfer was not recorded on the books of the company, **held** that plaintiff made out a case for the jury and that the court properly overruled the demurrer offered at the close of the case.

6.—**Same—Action Against Stockholder for Unpaid Stock Subscription— Instructions—Statute Correctly Interpreted.** In an action against a stockholder of a trust company for unpaid stock subscription, an instruction that, even if the trust company or the special deputy of the finance commissioner in control thereof received notice that defendant had sold his stock, he was not relieved thereby from liability for the unpaid portion of said stock unless they further found from the evidence that such notice came to the trust company or to the special deputy one year or more prior to the giving of the notice of the resolution and call for the unpaid portion of the subscription price, if from the evidence the jury found that such resolution was passed and notice of such call duly given to the defendant, **held** such instruction clearly interprets section 111794, Revised Statutes 1919.

7.—**Same—Same—Same—Suit Within One Year After Notice of Sale— Defendant's Requested Instruction Properly Refused.** In an action against a stockholder of a trust company for unpaid stock subscription, an instruction which, among other things, told the jury that if the defendant had given the trust company notice of the sale of his stock, then plaintiff, in order to recover as against the defendant for such unpaid portion of the subscription price of the stock, would have had to institute suit within one year after

such notice and knowledge of sale, **held** properly refused since it is not necessary, under section 11794, Revised Statutes 1919, that the suit be brought within one year from such notice, but merely that a call for the unpaid portion be made within a year.

**8.—Same—Same—Same—Assuming Facts—Properly Refused.** In an action against a stockholder of a trust company for unpaid stock subscription, an instruction which assumed as a fact that the defendant had given notice to the trust company and the special deputy of the finance commissioner in charge of same of the sale of the stock to the president of the company, within a year prior to the call for the unpaid subscription price thereon, and told the jury that the defendant could be liable, if at all, as indorser only, **held** properly refused as it was a question for the jury to determine whether or not any notice of the sale of the stock from the defendant to the president had ever been given to the trust company.

---

*Corpus Juris-Cyc References: Banks and Banking, 7CJ, p. 882, n. 60; Corporations, 14aCJ, p. 487, n. 20; p. 488, n. 31, 33; p. 489, n. 34, 38; Trial, 38Cyc, p. 154 8, n. 23; p. 1657, n. 53.

Appeal from the Circuit Court of the City of St. Louis.—Hon. William H. Killoren, Judge.

AFFIRMED.

*Jones, Hocker, Sullivan & Angert* for appellant.

(1) As indorser, the defendant was entitled to notice of demand and dishonor. Such notice was a condition precedent to his liability, and the evidence wholly failing to show such demand and notice, the demurrer to the evidence should have been sustained. · 8 C. J. 637-639; Rockfield v. Bank, 83 N. E. (Ohio St.) 392; Napper v. Blank, 54 Mo. 131; Vogel v. Starr, 132 Mo. App. 430; Westbay v. Stone, 112 Mo. App. 411. While it is true that the rights of all parties are fixed as of the date of insolvency, yet the Commissioner of Finance, like an assignee or receiver, merely steps into the shoes of the insolvent bank or trust company. He has no greater rights than the corporation or creditors would have, and the defendant is entitled to the same rights as he would have had in the absence of insolvency: 32 C. J. 841-843; Jacobi v. Jacobi, 101 Mo. 507; Midland Nat. Bank v. Brightwell, 148 Mo. 358; Homer v. National Bank of Commerce, 140 Mo. 225; Van Frank v. Walther, 84 Mo. App. 472. (2) There is no statute or provision of the Constitution of this State which requires a certificate of stock to be transferred upon the books of the company in order to relieve the stockholder from liability to creditors, and no by-law was shown in evidence making such transfer necessary. The sale and endorsement of the certificate of stock by the defendant in good faith to H. F. Reis effectually passed the title to the stock and the defendant thereafter ceased to be a stockholder in the Trust Com-

pany. 14 C. J. 1025; Dain Mfg. Co. v. Seed Co., 95 Mo. App. 146; Wilson v. Railroad, 108 Mo. 588; Crenshaw v. Mining Co., 110 Mo. App. 365; Kahn v. Bank, 70 Mo. 262; Moore v. Bank, 52 Mo. 377; McClaren v. Franciscus, 43 Mo. 452; Kretzer v. Cole Bros., 181 S. W. 1066. (3) Irrespective of all other questions in the case, the demurrer to the evidence should have been sustained because the uncontradicted evidence and the admissions in the record show that the fact that the defendant had sold his stock to H. F. Reis was known to the Trust Company. The president and secretary were the officers whose duty it was, if a transfer were necessary and proper, to make such transfer on the books of the company. Since the company knew of such transfer, it must be deemed to have acquiesced therein. Mining Co. v. Taylor, 247 Mo., 23; Mining & Smelting Co. v. Clayton, 233 S. W. 215; 14A C. J. 484, 488; Griffith v. Royal Arcanum, 182 Mo. App. 656. While it may be contended that the knowledge of the president and secretary in this case cannot be imputed to the Trust Company for the reason that their knowledge came to them in connection with their purchase of the shares in question, that rule cannot apply in this case because (a) they had no adverse interest in the matter to conserve by not conveying such information to the directors, and (b) such rule cannot apply where the knowledge is communicated to the very officers whose duty it is to see that the transfers are made on the books of the company. Citizens Trust Co. v. Coppage, 227 S. W. 1059; Magee on Banks & Banking (3 Ed.), p. 122, sec. 108; Cragie v. Hadley, 99 N. Y. 131; Smith v. Board, etc., Co., 38 Conn. 208; Merchants' Nat'l. Bank v. Marden, Orth & Hastings, 125 N. E. 384; Bridge Co. v. Light & Power Co., 268 S. W. 408; 14A C. J. 484, 488. Since its officers, and therefore the plaintiff, had the notice of sale, and also had possession of the certificate of stock with power of attorney to transfer, the plaintiff cannot be heard to maintain that the stock should have been transferred on the books. Whitney v. Butler, 118 U. S. 655; Shoe Co. v. Morris, 182 S. W. 225; Bracken v. Nicol, 199 S. W. 920; Foster v. Row, 79 N. W. 696; Hunt v. Seeger, 98 N. W. 91; Chem. Nat. Bank v. Colwell, 132 N. Y. 250; Isham v. Buckingham, 49 N. Y. 216. (4) Since the instructions given on the part of the plaintiff ignored the principles of law applicable to the case, and since the court refused defendant's instructions C and E, setting forth the conditions of defendant's liability as indorser, reversible error was committed. Authorities, supra.

*Hope & Hope* for respondent.

BECKER, J.—The Meramec Trust Company by authority and for the use of E. H. Benoist, special deputy finance commissioner of the State of Missouri, recovered judgment against the defendant, S. H.

Johnson, for the balance due on the subscription price of thirty shares of the said trust company stock alleged to be owned by the defendant. The defendant brings this appeal. Whilst the appeal was pending here the death of the appellant has been suggested and by consent the cause revived in the name of Jane Chester Johnson, executrix of the last will and testament of S. H. Johnson, deceased.

The Meramec Trust Company was incorporated in 1913 with an authorized capital stock of $100,000, subscribed for to the full amount thereof, but with only fifty per cent thereof paid in. Shortly thereafter the defendant, Johnson, purchased from one of the original subscribers thirty shares of the capital stock of the trust company and a new certificate for said thirty shares was duly made out and issued to him and his ownership thereof duly registered in the books of the trust company, and remained thus registered in defendant Johnson's name up to the trial of the case below.

In October, 1919, the bank commissioner of the State of Missouri took charge of the trust company for the purpose of liquidating the same and paying the claims of depositors and other creditors thereof, and appointed E. H. Benoist as his special deputy in charge. In conformity with the request of the special deputy the board of directors of the trust company, at a meeting on June 28, 1920, passed a resolution calling for the unpaid fifty per cent capital stock of the company. Notice of such call was duly published in a daily newspaper in the city of St. Louis, and also notice of such call was given the defendant Johnson, and the other stockholders of record, in writing by the said special deputy in charge of the trust company in the early part of July, 1920.

It is conceded that the defendant Johnson did in fact, on May 23, 1918, through Halliday & Company, a firm of brokers, sell his thirty shares of stock in the trust company to H. F. Reis, and that his certificate of stock duly endorsed by him was delivered at or about that time through said brokers to Reis but that this stock certificate was never surrendered to the Meramec Trust Company and never reissued in the name of Reis, and that the sale or transfer was never made a matter of record on the stock certificate register of the trust company; that the said Reis, at the time of the purchase of the stock by him from Johnson, was the president of the trust company, "but that in his purchase of these shares of stock Mr. Reis was acting in his individual capacity; bought the stock as an individual and was not acting as president of the Meramec Trust Company or buying it in his capacity as such president." Reis, who was president from the incorporation of the trust company, continued so up until a month or six weeks before the bank was taken over by the finance commissioner. At the time Reis resigned the presidency of the company he sold all of his shares of stock in the trust company, including those he had

purchase from Johnson, to J. G. Lowe the then secretary of the trust company, and according to Reis' testimony he gave his certificate of stock to his son with instructions to deliver them to Mr. Lowe.

So far as the record before us discloses no request was made by Johnson's brokers on delivery of the stock to Reis, that he have the certificate cancelled and a new certificate issued in his name; and furthermore defendant Johnson did not at any time thereafter make any investigation or inquiry as to whether his certificate had been cancelled and a new one issued in lieu thereof though the certificate of stock on its face contained the statement that the stock was but fifty per cent paid up, and that the shares were, "transferable only on the books of this corporation in person or by attorney upon the surrender of this certificate properly endorsed." And according to Reis' own testimony, when he made his sale of the said thirty shares of stock to Lowe, he made no request that the Johnson certificate be cancelled and a new one issued to Lowe therefor. Reis testified, however, that at a board of directors' meeting in July, 1919, when the question of his resignation as president and director of the bank came up, he told the directors that he had an opportunity to sell his stock but that as he was one of the original incorporators he did not want to resign, "until or unless they were all satisfied. I *was going to sell* my stock, except a few shares, if they so desired to keep me as a director. Well, then, of course, they hesitated from both sides to say whether I should remain or whether I should sell out. Finally one of the directors got up and said he would make a motion that we leave that to Mr. Reis, whatever he sees fit to do, either sell out entirely or remain with us. Well, I says, 'as long as you are going to leave it to me, *I am going to sell* out entirely,' and I told them there who *I sold* to, Mr. Lowe."

Analyzing Reis' statement to the board, it clearly appears therefrom that he had not in point of fact at the time disposed of his shares of stock, and that what he said amounted to a statement of his then present intention to sell all of his stock to Mr. Lowe. Furthermore, in light of the record before us there is nothing to indicate that anyone at any time had ever informed the board of directors or any of the active officers of the bank that Reis had purchased Johnson's thirty shares, which at all times remained standing on the stock registry book in Johnson's name, so that even were Reis' statement at the said directors' meeting to be viewed as a notice to the bank that he *had sold his stock* to Lowe, it could in no event have put the trust company on notice that Reis was the owner of the Johnson stock, and that such stock was included in the sale of Reis' stock to Lowe.

The record further discloses that some correspondence ensued between Johnson and the special deputy in charge of the trust company after Johnson, in July, 1920, received the notice of the call for the

unpaid fifty per cent of the capital stock, and by letter introduced in evidence on behalf of the defendant dated May 16, 1921, written by Johnson to Benoist, Johnson disclaims liability therein for the unpaid balance due on the stock, on the ground that since more than one year had elapsed since May 23, 1918, the date when he sold his stock to Reis, he was not liable for the said balance under the provisions of section 11794, Revised Statutes of Missouri, 1919. But he did not claim therein that any notice of such sale had ever been given the trust company. And the jury in returning a verdict for plaintiff necessarily found that no notice had been given the plaintiff trust company of the sale of the Johnson stock to Reis.

It has been said that a transfer of stock involves three distinct acts, all of which may take place at one and the same time, or each at a different time. There is, first the agreement of sale by which the right to the stock passes from the transferor to the transferee; second, the formal transfer of the certificate of stock; third, a registry of the transfer by an entry on the corporate transfer book. Now it is conceded here that whilst defendant Johnson did in fact sell his shares of stock to Reis, and that Reis in turn made sale thereof to Lowe, that no registry of the transfer was made on the records of the trust company, and that the stock at all times up to the filing of the suit herein, stood on the books of the trust company in the name of Johnson.

The general rule is that the transferor is not released from liability for an unpaid balance of the subscription price of stock sold until the transfer is duly registered in the corporate books, and that until such transfer has been recorded in the transfer book of the corporation the transferee cannot be duly recognized as a stockholder, and is not chargeable with the unpaid balance of the subscription though the transferee is bound, however, to protect and indemnify his transferor. [Bracken v. Nicol, 124 Ky. 628; Shellington v. Howland, 53 N. Y. 371; Barron v. Burrill, 86 Me. 72; Davis v. Essex Baptist Society, 44 Conn. 582; Bowden v. Farmers,' etc., Bank, 1 Hughes, 307; Brown v. Allebach, 166 Fed. 488; Sherman v. Oil Co. (Cal.), 197 Pac. 799; Hood v. McNaughton, 54 N. J. L. 425; Hawkins v. Citizens, etc., Co., 38 Oregon, 544; Sherwood v. Bank, 195 Ill. 112.]

In Missouri, however, the rule that liability for any unpaid portion of the capital stock of a company on the part of one who appears on the books of a corporation as the owner thereof, where such stock has been sold but no notice given to the corporation of such sale, has been modified by section 11794, Revised Statutes of Missouri, 1919, which limits the liability of the vendor to that of an endorser, "for whatever is still due on such shares" for one year after notice to the corporation of such sale or transfer. In other words, if no call is made for any or all of, "whatever is still due on such shares" within one

year after notice to the corporation of such sale or transfer, the vendor is released from any and all liability for any unpaid balance due on such stock.

Whilst Reis was the president of the plaintiff bank at the time the defendant Johnson sold his certificate of stock in the bank to him, and Lowe was secretary when he bought the said stock from Reis, it must be noted that though Johnson endorsed his certificate of stock in blank and had his brokers deliver it to Reis, no request or demand was made on Reis or the trust company to cancel it and issue a new certificate in his, Reis' name, nor was there any such request by Reis upon the sale of the stock by him to Lowe. The sales of the stock were admittedly private transactions between Johnson and Reis, and Reis and Lowe, and in each case the interest of the transferee in the matter of the purchase and sale was antagonistic to the interest of the bank, for both Reis and Lowe, by permitting the stock to remain in the name of Johnson, on the books of the company, made him instead of them primarily liable for the unpaid subscription, whereas had the Johnson certificate of stock been cancelled and a new certificate issued in the name of Reis, and thereafter upon his sale to Lowe a new certificate issued in the name of Lowe, Reis and Lowe would have become primarily liable for said unpaid subscriptions. In this situation the facts do not bring the case within the rule that knowledge of an officer or agent is knowledge to the corporation where the matter is within the scope of his authority as such, and the knowledge comes to him in his official or representative capacity, but falls within that class of cases which holds that where the knowledge comes to an officer of a corporation, through his private transactions and beyond the range of his official duties, and in a matter in which his interest is antagonistic to the interest of the corporation, it is not knowledge on the part of the corporation, even though the officer obtaining the knowledge, was, at the time, the managing agent of the corporation. [St. Louis & St. Charles Bridge Co. v. Light & Power Co., 268 S. W. 404; Kearney Bank v. Froman, 129 Mo. 427, l. c. 430, 31 S. W. 769; 50 Amer. St. Rep. 456, 14 Corpus Juris, secs. 2355-56; Williams & Pearson v. Dittenhoefer, 188 Mo. 134, l. c. 144, 86 S. W. 242; Benton v. Bank, 122 Mo. 332, 26 S. W. 975; Johnston v. Shortridge, 93 Mo. 227, 6 S. W. 64; Bank of Kansas City, etc. v. Lovitt, 114 Mo. 519, 21 S. W. 825; Griffith v. Royal Arcanum, 182 Mo. App. 644, 166 S. W. 324.]

From the record and the law pertinent thereto as we have outlined it above, we are clear in our view, and so hold, that plaintiff made out a case for the jury and that the court properly overruled the demurrer offered at the close of the case.

We next take up the assignments of error addressed to the instructions in the case. As to plaintiff's instruction numbered one, it properly sets out plaintiff's theory of the case which is based solely

upon the proposition that no notice was ever given the trust company of any sale by the defendant Johnson of his stock in the company and it fairly and fully hypothesizes the several facts necessary to be found under this issue by the jury to entitle plaintiff to a verdict. The instruction is in fact more favorable to the defendant than need be.

Plaintiff's instruction numbered two, in our view, clearly interprets section 11794, Revised Statutes of Missouri, 1919, when it tells the jury that even if they should find and believe from the evidence that the trust company or the special deputy of the Finance Commissioner did receive notice from the defendant, Johnson, that he had sold his stock to Reis, yet that the defendant was not relieved thereby from liability for the unpaid portion of the said stock unless they further found from the evidence that such notice came to the trust company or to the special deputy one year or more prior to the giving of the notice of the resolution and call for the unpaid portion of the subscription price, if from the evidence the jury found that such a resolution was passed and notice of such call duly given the defendant.

Nor is there any merit in the contention that the trial court erred in refusing defendant's instruction C since said instruction among other things told the jury that if the defendant, Johnson, had given the trust company notice of the sale of his stock, then the plaintiff, in order to recover as against the defendant, Johnson, for such unpaid portion of the subscription price of the stock, would have had to institute suit within one year after such notice and knowledge of sale, since it is not necessary under the statute that the suit be brought within one year from such notice, but merely that a call for the unpaid portion be made within the year.

And the court properly refused defendant's requested instruction E since it assumed as a fact that the defendant had given notice to the trust company and the special deputy of the Finance Commissioner in charge of same, of the sale of his stock to Reis, within a year prior to the call for the unpaid subscription price thereon, and tells the jury that the defendant could be liable, if at all, as endorser only, when in point of fact, as we have pointed out above, under the record in the case it was a question for the jury to determine whether or not any notice of the sale of the stock from the defendant to Reis had ever been given to the trust company.

We have gone over the record in this case and find that the same has been well tried and that the instructions submitting the case to the jury fully and fairly submitted the issues in the case and contain no error prejudicial to the rights of the defendant. The judgment is for the right party and should be affirmed. It is so ordered. *Daues, P. J.,* and *Nipper, J.,* concur.